SCHWAN–STABILO COSMETICS GMBH & CO., Plaintiff–Appellee,

v.

PACIFICLINK INTERNATIONAL CORPORATION and Paul Shieh, Defendants–Appellants.

Docket No. 04–0645–CV.

United States Court of Appeals, Second Circuit.

Argued: Sept. 20, 2004.

Decided: March 3, 2005.

Thomas J. Fleming, Olshan, Grundman, Frome, Rosensweig & Wolosky L.L.P., New York, NY, for Defendants–Appellants.

Paul M. Brown (Timothy T. Brock and Jennifer S. Smith on the brief), Satterlee, Stephens, Burke & Burke L.L.P., New York, NY, for Plaintiff–Appellee.

Before: FEINBERG, MESKILL and B.D. PARKER, Circuit Judges.

FEINBERG, Circuit Judge.

Defendants-appellants PacificLink International Corporation ("PacificLink") and Paul Shieh appeal from a judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, Judge) granting plaintiff-appellee Schwan–Stabilo Cosmetics GmbH & Co.'s ("SSC") motion for summary judgment, denying defendants' motion for summary judgment, and awarding plaintiff $492,525 plus interest, to be paid jointly and severally by defendants. For the reasons set forth below, we affirm in part and vacate in part, and remand for further proceedings.

## I. BACKGROUND

### A. The Share purchase agreement

Plaintiff-appellee SSC is a private German company specializing in cosmetics manufacture and distribution. For several years prior to the events giving rise to this dispute, SSC's products were distributed by Tianjin Kerma Laboratories Co., Ltd. ("Kerma"), a Chinese cosmetics manufacturer. At the time, 99 percent of Kerma stock was owned by PacificLink (a New York corporation) and its chairman and sole shareholder, Shieh. SSC and Shieh began discussing the possibility of SSC's acquiring a majority interest in Kerma, and in April 1999 the parties signed a letter of intent reflecting SSC's intention to buy 67 percent of Kerma's outstanding shares for $1 million. SSC then conducted a due diligence inquiry, and learned from its auditors about various liabilities carried by Kerma—including unpaid taxes, customs duties, and social insurance contributions—that were not disclosed on the financial statements that had been provided to SSC. It emerged that Kerma maintained two sets of books, one internal and the other for the Chinese authorities; the latter apparently excluded records of certain sales for taxation purposes. The auditors also opined that equipment and inventory listed by Kerma as assets were obsolete and should not be carried at full value.

After SSC expressed to Shieh its concern about these apparent irregularities, Shieh assured SSC that the liabilities would not be realized. SSC then agreed to follow through with the deal as long as Shieh agreed to indemnify SSC in the event that the liabilities came due. An indemnification provision was included in the share purchase agreement ("Agreement"), which was executed by the parties on May 3, 2000. The indemnification provision capped the financial obligation to indemnify at $492,525. The Agreement also required, among other things, that SSC pay approximately $1 million in exchange for 67 percent of outstanding Kerma stock, that SSC contribute additional capital to Kerma over the course of the following two years, and that SSC share with Shieh any profits from Kerma's operation.

Not long after the Agreement took effect and SSC had purchased the Kerma shares, SSC conducted an internal audit of the company and discovered that Kerma's liabilities were even greater than the pre-Agreement audit had revealed. Soon thereafter, the Chinese authorities demanded the unpaid taxes, social insurance costs, and customs fees—which amounted to almost $1 million—and the obsolete inventory allegedly had to be written down by approximately $405,000. SSC approached PacificLink and Shieh, requesting indemnification, and was refused.

### B. District court proceedings

SSC filed a complaint in the district court on February 22, 2002, claiming jurisdiction based on diversity and alleging

breach of the indemnification provision. After filing suit, SSC did not make the further capital contributions or profit distributions called for in the Agreement. Shieh and PacificLink asserted counterclaims against SSC, including claims for these contributions and distributions.

Both plaintiff and defendants moved for summary judgment. The district court heard argument, after which it granted plaintiff's motion and denied defendants' in a memorandum and order dated December 10, 2003. The judge found that PacificLink was indeed obligated to indemnify under the Agreement, and that the damages—which were not well documented in the record before the district court—doubtlessly exceeded the indemnification cap of $492,525 established in the Agreement (see note 1, infra). Defendants moved for reargument and modification of the final judgment, arguing that they should have been allowed to tender Kerma shares instead of paying monetary damages, as provided by the indemnification provision, and that Shieh should not have been held liable, since only PacificLink, as the "seller" under the Agreement, was contractually liable for indemnification. The district court denied the motion in January 2004, concluding that Shieh was a seller in his individual capacity and was also the alter ego of PacificLink. The court further found that defendants could not tender Kerma stock instead of paying money damages, because they had waived their right to do so when they refused to indemnify SSC. This appeal followed.

## C. Issues on appeal

Defendants raise several challenges to the district court's rulings. First, they maintain that the court should not have granted summary judgment to plaintiffs on the indemnification claim, since a genuine issue of material fact existed as to whether defendants were obliged to indemnify under the circumstances. Second, defendants contend that the district court should not have granted summary judgment on damages because the parties sought only summary judgment on liability and therefore defendants were not on notice that they had to advance arguments and submit evidence relating specifically to damages. Third, defendants argue that since the Agreement specifically permitted PacificLink to tender shares of Kerma stock in lieu of money under the indemnification provision, the district court erred in refusing to permit such tender in satisfaction of the judgment. Fourth, defendants assert that the district court erred when it concluded that Shieh was liable under the indemnification provision, since it identifies only the "seller" as potentially liable and the Agreement defines PacificLink as the "seller." Fifth, defendants argue that the district court erroneously found that Shieh was PacificLink's alter ego, despite the existence of a factual dispute on this point. Sixth, defendants contend that the district court erred in dismissing all of their counterclaims, since these claims were legitimately made against SSC for its own contractual obligations and those of Kerma, which SSC controlled. If they had been given the opportunity to argue and prove them, defendants maintain, these counterclaims would offset the amount they were ordered to pay SSC pursuant to the indemnification provision.

## II. DISCUSSION

### A. Standard of review and applicable law

We review a district court's grant or denial of summary judgment de novo, *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 165 (2d Cir.2003), and all factual inferences are to be drawn in favor of PacificLink and Shieh. *Clarett v. Nat'l Football League*,

369 F.3d 124, 130 (2d Cir.2004). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The district court applied New York law in its rulings in this case, and the parties agree that New York law governs their dispute.

**B. Applicability of the indemnification provision**

█ The district court, without identifying which clause of the indemnification provision of the Agreement applied,[1] found that this provision was breached. Defendants argue that section 6a(4), which provides for indemnification arising out of "any liability not disclosed by the balance sheet(s) or other financial record of [Kerma]," is too ambiguous (as indicated by the parties' conflicting interpretations) to make summary judgment proper. We agree that clause (4) is not a model of clarity, since it must be acknowledged *both* that some of Kerma's financial records (those prepared for the benefit of the Chinese authorities) do not disclose Kerma's liabilities, *and* that some of Kerma's liabilities *are* disclosed in some of the financial records of the company. However, some of Kerma's liabilities were undisputedly

not disclosed on any balance sheet, and were only revealed by the audit. Further, it is not disputable that the indemnification provision was added to the Agreement to address SSC's concern about all of the liabilities disclosed in the audit. Moreover, subsection b of the indemnification provision unmistakably expresses the parties' intent to provide indemnification even against liabilities of which SSC had actual or constructive knowledge. See *CBS Inc. v. Ziff Davis Publ'g Co.*, 75 N.Y.2d 496, 503–04, 554 N.Y.S.2d 449, 553 N.E.2d 997 (1990) ("The right to indemnification depends only on establishing that the warranty was breached," not on the indemnitee's belief that the facts warranted are true). All of the evidence plainly indicates that the parties intended SSC to be indemnified in the event that the financial statements prepared for the benefit of the Chinese authorities turned out to misrepresent Kerma's actual liabilities—the precise event that came to pass. Accordingly, we affirm the district court's finding that the indemnification provision was breached.

**C. The damage award**

█ In plaintiff SSC's notice of motion for summary judgment and judgment on the pleadings, it stated that it would seek

---

1. Section 6 of the Agreement, which is the indemnification provision, reads in relevant part as follows:
SELLER agrees to the following:
a. Indemnification Agreement
SELLER shall indemnify BUYER against liability, damage, loss or expense (loss) arising out of (1) any breach of warranty/guaranty or any misrepresentation by SELLER; (2) nonperformance by SELLER of the covenants under this Agreement, (3) any misrepresentation or omission in any certificate or document delivered to BUYER under this Agreement; and (4) any liability not disclosed by the balance sheet(s) or other financial record of COMPANY.
. . .

SELLER may indemnify BUYER in lieu of payment by offering shares for acquisition from SELLER. Each 1% of SELLER's shares shall be assessed in accordance with the following formula:
$$US\$ \ 1 \ Mio. = \frac{US\$ \ 14.925}{67\%}$$
The financial obligation of SELLER to indemnify BUYER is therefore limited at US\$ 492,-525 and will not extend beyond December 31st, 2002.
b. Duty to inspect
The warranties under this Agreement shall be independent of whether BUYER had knowledge or should have had knowledge of the facts giving rise to a warranty claim.

"an order granting SSC summary judgment with respect to liability" on its claim against PacificLink and Shieh. Evidence of damages was submitted with the exhibits to the affidavits offered in support of plaintiff's motion, but the district court characterized some of this evidence as "buried" in the record and other portions of this evidence as "in dispute" and "vague." Indeed, the parties' motion papers do not address the issue of damages, and at oral argument on the cross-motions, the court did not hear or ask for any argument on the issue. The primary source of information on damages seems to be a report issued by the auditing firm hired by SSC to assess the damage it sustained from its investment in Kerma. The district court concluded that because the total damages identified by the firm in its report far exceeded the $492,525 contractual cap of the Agreement's indemnification provision, the available evidence supported a finding of damages in the amount of the contractual maximum.

■ SSC clearly did not seek an award of damages in its motion; pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, it requested only a determination of liability. Defendants were not on notice that a decision on the motion would entail a determination of damages, and were therefore not afforded the opportunity to challenge the accuracy of the auditor's report or make the setoff and recoupment arguments that they now assert on appeal. District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances. *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 139 (2d Cir.2000). However, "[c]are should ... be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Ramsey v. Coughlin,* 94 F.3d 71, 73–74 (2d Cir.1996) (citing 6 James W. Moore, *Moore's Federal Practice* ¶ 56.12, at 56–165 (2d ed.1995)). Because defendants were not given the opportunity to contest SSC's evidence on damages, we conclude that the award of damages was improper and remand to the district court for further proceedings.

## D. The proposed stock tender

■ Defendants argued in their motion for reargument that, assuming they are liable under the indemnification provision and owe damages in the amount awarded by the court, they should be allowed to satisfy the judgment with shares of Kerma stock in lieu of cash, as specifically provided in the indemnification provision (see note 1, supra). The district court rejected this argument:

> Although Defendants were unwilling to concede the fact ..., it is clear to this Court that the shares of Kerma are now valueless.... Defendants never tendered the shares in satisfaction of their duty to indemnify. The case was not heard on the theory that this alternative form of payment remained available to defendants after the breach of their duty to indemnify. During the pendency of the lawsuit, Kerma shares became worthless. Since Defendant[s] failed to tender the shares when they had value, and when it was clear that they had no valid defense to the demand for indemnification, it would be inequitable to allow the tender of worthless paper at this late date. Having not raised the issue when the motion was argued, the claim is waived.... This Court is not directing specific performance; rather it is awarding money damages for failure to perform the agreement to indemnify. We

assume that had they timely tendered performance, they might have simply delivered stock in performance. Having breached the duty, they must pay money damages.

We agree that while it may have been proper for defendants to tender shares in satisfaction of the indemnification provision when the duty to indemnify arose, having breached the provision, defendants may not now rely on a contractual clause that would allow them effectively to avoid paying for their breach.

■ The parties present opposing views on the rules governing alternative agreements such as the one at issue here. Defendants cite *Branhill Realty Co. v. Montgomery Ward & Co.*, 60 F.2d 922 (2d Cir. 1932) and *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 320 N.Y.S.2d 225, 269 N.E.2d 21 (1971), as well as section 325 of the First Restatement of Contracts, in support of their view of the rule. According to that view, when a contract allows a party to select between alternative performances, and that party breaches before making a selection, the other party is entitled only to damages in accordance with the alternative resulting in the smaller recovery. Even if this is currently the rule—and its absence from the Second Restatement of Contracts suggests that it is not—it does not appear to apply in a case such as this one. SSC directs the court to authority that states the rule in the case where an alternative contract provides as one alternative the payment of a sum of money. In such a circumstance, "the damage for breach of the obligation has been regarded as the sum of money promised, although that conceivably may be the alternative more onerous to the defendant." 25 Richard A. Lord, *Williston on Contracts* § 66:106 at 120–21 (4th ed.2002). See also *Prudential Ins. Co. of Am. v. Faulkner*, 68 F.2d 676, 679 (10th Cir.1934)

(holding that "[o]ne who repudiates his obligation under a contract cannot thereafter exercise an election contained in its provisions"). What is more, to apply the rule that defendants urge upon us would violate a fundamental principle of contract law, namely that damages for breach are meant to make good the loss caused by the breach. "Damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed." *Brushton–Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 261, 669 N.Y.S.2d 520, 692 N.E.2d 551 (1998).

Defendants waived their right to tender the now-worthless Kerma shares when they refused to indemnify SSC in a timely fashion. To allow them to exercise this option after having breached the indemnification provision would be inequitable. The defendants will not be permitted to tender these shares in satisfaction of any award made pursuant to further proceedings on damages in the district court.

## E. The liability of Shieh as a "seller"

■■ The district court held Shieh and PacificLink jointly and severally liable. Defendants now argue that this was error because the indemnification provision expressly obligated only "seller," which is defined elsewhere in the Agreement as PacificLink. Although defendants now challenge the conclusion that Shieh could be liable in his individual capacity as a "seller," they did not clearly raise this point in the district court until after the court had granted plaintiff SSC's motion for summary judgment. At that point, in their motion for reargument and modification of the judgment in the district court, defendants for the first time asserted the argument now made to us. The district

court denied the motion in all respects, concluding that "based on the pleadings ... Mr. Shieh was also a seller in his individual capacity" and correctly observing that a motion for reargument is not a substitute for an appeal.

 While we generally "will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration," *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 159 (2d Cir.2003), we have discretion to do so. We are more likely to exercise our discretion to consider issues not timely raised below when either (1) "consideration of the issue is necessary to avoid manifest injustice" or (2) "the issue is purely legal and there is no need for additional factfinding." Id. (internal quotation marks omitted). We have considered this issue and agree with the district court's conclusion. The record reveals multiple instances in the pleadings in which defendants admit that *both* Shieh and PacificLink had agreed to indemnify SSC against certain liabilities, and in which defendants assert the liability of SSC toward Shieh as a "seller." [2] We have held that statements in papers submitted to the court may constitute judicial admissions. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994). In light of defendants' repeated admissions in the pleadings, and the clear litigation position staked out therein, we conclude that it would be manifest injustice *not* to hold Shieh personally responsible for acts he performed on behalf of a company over which he plainly exercised plenary control. Accordingly, we affirm the district court's holding on this point.

Because the conclusion that Shieh is personally liable as a "seller" under the indemnification provision remains undisturbed, we need not address any alternative grounds proposed by SSC for finding Shieh individually liable, such as the argument that an alter-ego relationship existed between Shieh and PacificLink.

## F. Defendants' counterclaims

 The district court dismissed defendants' first, second, third, and eighth counterclaims; the rest of the counterclaims had already been withdrawn. The first counterclaim alleges that SSC breached the Agreement by failing to distribute a percentage of Kerma's profits to Shieh; the second alleges that Kerma failed to repay a loan extended by defendants; the third alleges that SSC, as "de facto manager of Kerma," violated Kerma's articles of association by failing to distribute profits to Shieh; and the eighth alleges that SSC breached the Agreement by not paying a penalty to defendants when it failed to make required investments in Kerma. The first, second, and third counterclaims are all essentially claims against Kerma, which was not joined although, as a "person[ ] having an interest in the controversy," *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), it was a necessary party under Rule 19 of the Federal Rules of Civil Procedure. See *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.2000). Therefore, we conclude that the district court was correct in dismissing those counterclaims without prejudice.

We have considered appellants' arguments concerning their counterclaims, in-

---

**2.** E.g., defendants "admit that they would indemnify plaintiff for undisclosed liabilities of Kerma or misrepresentations made by defendants" (Defs.' Answer ¶ 8 and Defs.' Amended Answer ¶ 8); further, in quoting from the indemnification provision, defendants define "SELLER" as "defendants" (Defs.' Mem. Summ. J. 2).

cluding their eighth counterclaim, and find that none of them justifies remanding for further proceedings on liability.[3]

## III. CONCLUSION

We have considered all of defendants' arguments on appeal and, aside from the procedural deficiency of the damages award, none justifies reversal of the judgment of the district court. For the foregoing reasons, we affirm the district court in part and vacate in part, and remand for further proceedings on damages consistent with this opinion.

3. The eighth counterclaim was premised on a provision in the Agreement that required SSC to invest $1,650,126 in Kerma before December 31, 2002, and if that investment were not so made "for reasons solely attributable to [SSC]," PacificLink would be entitled to a payment equaling 33% of the amount not invested. SSC asserts that it failed to make the investment in part because defendants' prior breaches, in combination with a European Union trade embargo, caused Kerma such severe financial damage that the compa-ny was no longer functioning by the time such an investment was to have been made. Defendants allege in reply that SSC contributed to Kerma's insolvency by removing equipment from its factory and relocating it to a nearby factory also operated by SSC. SSC, however, has offered unrebutted testimony that the equipment was moved during Kerma's liquidation. Defendants have failed to create a triable issue of fact as to this counterclaim.