10-292-cv (L)
Webadviso v. Bank of America

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of October, two thousand eleven.**

PRESENT:

JOSÉ A. CABRANES,
JOSEPH M. MCLAUGHLIN,
DEBRA ANN LIVINGSTON,
    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

J. TAIKWOK YUNG WEBADVISO,

    *Plaintiff-Appellant*,

    -v.-                                             Nos. 10-292-cv (L)
                                                          10-1307-cv (Con)

BANK OF AMERICA CORP., MERRILL LYNCH,

    *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR APPELLANT:**                    DAVID N. ROSEN, David Rosen & Associates, P.C., New Haven, CT.[1]

**FOR APPELLEE:**                     CHARLES A. BURKE (Jacob S. Wharton, *on the brief*), Womble Carlyle Sandridge & Rice, PLLC, Winston-Salem, NC; (John Maggio, *on the brief*) Condon & Forsyth LLP, New York, NY.

---

[1] *Pro bono* counsel appointed pursuant to an order of this Court issued on June 24, 2010. The Court expresses its appreciation of Mr. Rosen's service as appointed counsel in this civil case.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED.**

Plaintiff-appellant J. Taikwok Yung Webadviso ("Yung" or "Webadviso") appeals from a judgment granting summary judgment to defendants-appellees Bank of America Corp. and Merrill Lynch on Yung's petition for declaratory judgment and on the appellees' counter-claims of trademark infringement, 15 U.S.C. § 1114, unfair competition, *id.* § 1125(a), trademark dilution, *id.* § 1125(c), cybersquatting, *id.* § 1125(d), and injury to business reputation, N.Y. Gen. Bus. Law § 360-*l*. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

DISCUSSION

A.      *Standard of Review*

We review the District Court's decision to grant summary judgment *sua sponte* to the defendants *de novo*. *Schwan–Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*, 401 F.3d 28, 31 (2d Cir. 2005). Summary judgment is appropriate where the available facts show that "there is no genuine dispute as to any material fact and [a party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1223 (2d Cir. 1994). Courts have the discretion to grant summary judgment *sua sponte*, so long as the court "'determine[s] that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried. . . .'" *Schwan–Stabilo Cosmetics*, 401 F.3d at 33 (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (observing that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.").

Summary judgment was granted in this case following the District Court's *sua sponte* order to show cause. The record shows that the District Court, after entering the order to show cause, granted plaintiff a full and fair opportunity to be heard.

B.    *The Anticybersquatting Consumer Protection Act*

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), was enacted in 1999 to protect consumers and holders of distinctive trademarks from "cybersquatting," which "involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 493 (2d Cir. 2000). To successfully assert a claim under the ACPA, a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark. *See* 15 U.S.C. § 1125(d)(1)(a). The first two elements are not seriously disputed on appeal.

With respect to the "bad faith" element, the ACPA lists nine non-exclusive factors for courts to consider in determining whether a domain name registrant has acted in bad faith:

> [1] the trademark or other intellectual property rights of the [registrant], if any, in the domain name;
> [2] the extent to which the domain name consists of the legal name of the [registrant] or a name that is otherwise commonly used to identify that [entity];
> [3] the [registrant's] prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> [4] the [registrant's] bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> [5] the [registrant's] intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> [6] the [registrant's] offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the [registrant's] prior conduct indicating a pattern of such conduct;
> [7] the [registrant's] provision of material and misleading false contact information when applying for the registration of the domain name, the [registrant's] intentional failure to maintain accurate contact information, or the [registrant's] prior conduct indicating a pattern of such conduct;
> [8] the [registrant's] registration or acquisition of multiple domain names which the [registrant] knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names . . ., without regard to the goods and services of the parties; and

[9] the extent to which the mark incorporated in the [registrant's] domain name registration is or is not distinctive and famous . . . .

15 U.S.C. § 1125(d)(1)(B)(i).[2]

By Yung's own admission, he seeks to "acquire high value domain names and park them with domain parking service providers to generate pay-per-click revenue." *Webadviso v. Bank of Am. Corp.*, No. 09 Civ. 5769, 2010 WL 521117, at *2 (S.D.N.Y. Feb. 16, 2010). By doing so in this case, Yung ran afoul of the ACPA, for whether or not he had any intention of selling the domain names to appellees, he clearly had the intention to profit from the goodwill associated with the trademarks that comprised the domain names. His business model relied upon diverting internet users (presumably, among others, those who were attempting to access the websites of Bank of America and Merrill Lynch) to his own website—which contained content that could tarnish the infringed marks, or at the very least was not what the searchers sought to find—in order to profit from the "pay-per-click revenue" that their increased web traffic would bring his site. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V) (bad faith may be inferred from "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site"). The appellant's own self-description makes clear that he registered the domain names in bad faith and thereby violated the ACPA.[3] Accordingly, no genuine issue of material fact prevented the District Court from granting summary judgment to the appellees on the ACPA counter-claim.[4]

---

[2] The statute also sets forth a "bad-faith safe harbor" provision where the defendant "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii); *see Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950, 2005 WL 2148925, at *13 (S.D.N.Y. Sept. 6, 2005). Appellant does not argue that he believed his use of the ML and BOFA trademarks was a fair use, or that he had any other lawful right to use the marks. Therefore we do not address whether he could have availed himself of the statutory safe harbor.

[3] The evidence available to the District Court on summary judgment would have also supported a determination of bad faith on at least two other statutory bases. For example, records filed by the appellees establish that Yung had registered some 180 domain names, many of which were composed, in whole or in part, of famous trademarks, *see* 15 U.S.C. § 1125(d)(1)(B)(i)(VIII), and he registered the domain names using false identification information, *see id.* § 1125(d)(1)(B)(i)(VII).

[4] We do not address the appellant's arguments regarding the non-ACPA claims, as the relief granted to the appellees was available upon the District Court's grant of judgment for the appellees on the ACPA claim.

CONCLUSION

We have considered and examined the appellant's arguments on appeal and find they are without merit. Accordingly we AFFIRM the judgment of the District Court.


FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court