*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FRANZ WEISER REVOCABLE TRUST.

---

JEREMY GREGG and ERICA GREGG,

        Petitioners-Appellants,

v

HILDA WEISER and REINER KREISSIG, Co-
Trustees for the FRANZ WEISER REVOCABLE
TRUST,

        Respondents-Appellees.

UNPUBLISHED
July 20, 2023

No. 363537
Huron Probate Court
LC No. 2022-042593-TV

---

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Concerned that their aunt and uncle had unduly influenced their grandparents to disinherit them, Jeremy and Erica Gregg filed a petition to either invalidate their grandfather's trust or for court supervision. After specifically instructing the parties that it was not yet time to address the merits of the Greggs' undue influence claim, the court sua sponte dismissed the petition, asserting that the Greggs failed to support it. This surprise order of dismissal contravened the Greggs' right to due process. We vacate the order dismissing the petition and remand for further proceedings.

## I. BACKGROUND

Franz and Maria Weiser were married for approximately 60 years. Maria entered the marriage with a young son, Reiner Kreissig, whom Franz helped raise. The couple had two daughters, Gunda and Hilda. Gunda died in 1990, leaving two children, Jeremy and Erica Gregg.

The Greggs contend that the Weisers' 1992 estate plan provided for their inheritance of Gunda's share by representation. The cotrustees state on appeal that "no copies of the 1992 Wills are known to exist." A durable power of attorney executed by Maria in 1992 is of record, however. In 2015, Franz and Maria Weiser executed new wills, naming Reiner and Hilda as their sole heirs

-1-

and specifically stating: "In making this Will, I have duly considered the natural objects of my bounty and specifically and conscientiously exclude, disinherit, and leave nothing to either Jeremiah Gregg or Ericka Gregg or to their children or Grandchildren."[1]

In 2018, following Maria's entry into a nursing home, Franz established the Franz Weiser Revocable Trust. The trust identified Franz and Maria's living and deceased children and stated that Reiner and Hilda were the only beneficiaries of the trust. The trust also identified "Jeremiah Gregg" and "Ericka Gregg" as Franz's grandchildren and stated that he "intentionally, with full knowledge, [had] chosen to exclude [them] and [their] descendants under the terms of [his] Trust Agreement."

Maria died on August 18, 2019, at the age of 97. Franz died on December 12, 2020. Erica did not learn of her grandfather's passing until July 6, 2021. The Greggs asserted that Reiner and Hilda intentionally concealed their grandparents' deaths from them.

In an affidavit, Erica asserted that after Gunda's passing, the Weisers held her personal belongings in safekeeping with the promise they would be returned to Jeremy and Erica. However, Reiner and Hilda refused to release those items after the Weisers' deaths. Erica described that Hilda convinced her grandparents not to take her and Jeremy in after their mother's passing and they were sent to live with their father, a relative stranger to them. In their absence, Erica alleged that Hilda sold their mother's home and took their family's personal belongings. These conditions "put a continued strain on the relationship" between the Greggs and their grandparents, but they "work[ed] on [the] relationship" and "moved on from the past."

In April 2022, Jeremy and Erica Gregg filed a petition for court supervision of the trust, to invalidate the trust based on undue influence, to ascertain the trust beneficiaries, and for an inventory and accounting. The Greggs identified themselves as trust beneficiaries. They alleged that the Weisers' original estate plan provided for Jeremy and Erica to inherit their mother's share of the estate by representation.

> However, in January of 2018, while MARIA WEISER was incapacitated, HILDA WEISER and REINER KREISSIG convinced FRANZ WEISER through undue influence to change his estate planning and form the FRANZ WEISER REVOCABLE LIVING TRUST DATED JANUARY 16, 2018, transferring all of his and MARIA WEISER's assets into the Trust and making [sic] HILDA WEISER and REINER KREISSIG as successor Co-Trustees.

The Greggs asserted that they, "by way of representation, are the natural objects of FRANZ WEISER'S bounty," and therefore, "it is presumed that they would be provided for as beneficiaries under this new Trust unless there was undue influence" on Franz from Hilda and Reiner. The Weisers "would never have disinherited their grandchildren . . ., the last remaining legacy of their departed daughter GUNDA" absent undue influence, the Greggs alleged. The Greggs further

---

[1] Jeremy and Erica Gregg's names were misspelled in both the 2015 wills and 2018 trust, a fact we return to later in this opinion.

noted that Hilda and Reiner had rejected their many requests to produce the trust documents, informing the Greggs that they were not trust beneficiaries but providing no proof.

The probate court conducted a pretrial conference on May 18, 2022. The court indicated that no evidentiary hearing would be conducted that day. "[T]oday's proceeding will be conducted really as a pretrial conference to see where we are, what's going to happen with evidentiary hearings, discovery, things like that." The court indicated that it would order a 90-day period for discovery. The Greggs noted that the first step would be production of the trust. Counsel for the cotrustees, Michelle Biddinger, asserted that as the Greggs were not beneficiaries of the trust, they were not entitled to production of the trust documents. The court indicated, "I think what we need to do is to set a hearing on that . . . immediately." That would be "the starting point."

Regarding the issue of undue influence, the Greggs' counsel, Vincent Farougi, stated:

[W]e're dealing with . . . an issue of undue influence and whether that creation of that trust . . . was unduly influenced by Hilda and Reiner. Now, we have one piece of evidence, one paper, allegedly from the trust, which has given us clues that there was undue influence and that the testator did not know what he was doing. He names his step-son as his living child; which he's not his living child. He names his grandson Jeremiah; . . . Jeremiah, it's not even his name. So, we have two clues that Franz didn't know what he was signing. But that's one page out of the trust; that which happened to be attached as an exhibit to their response. So . . . we want to see the whole trust so we can show further evidence that Franz was either not of his right mind and/or there was - -

The court interrupted, acknowledging that the Greggs alleged undue influence but indicating that the court was "inclined to start with" answering whether the Greggs were entitled to discovery of the trust documents. The court continued that it was sua sponte ordering a hearing on the sole issue of whether the Greggs were entitled to production of the trust documents. "[W]e're not talking about undue influence or anything." Given that the court limited the issue then before it, no scheduling order entered.

In July 2022, the court heard oral argument regarding the production of the trust documents. Attorney Farougi argued that he required production of the trust documents to ascertain whether Franz was subject to undue influence. He contended that were clues from the one page provided to the Greggs that Franz had not read the document. The document referred to Reiner as Franz's living child, when he was actually Franz's stepchild. The document incorrectly referred to Jeremy as Jeremiah and misspelled Erica's name. These were "red flags." Moreover, counsel contended that Michigan's "broad production rules" required discovery of the trust documents. Farougi noted the same errors in the 2015 will. This was concerning because Franz and Maria were "in their 80s and susceptible to undue influence and, and not of their sharpest wit."[2]

---

[2] It appears that the Weisers were actually in their 90s during the time in question.

Biddinger posited that the misspelling of the Greggs' names was actually evidence that the relatives were estranged. Further, as Franz had raised Reiner since he was a baby, he always considered Reiner to be his child. Biddinger asserted:

I think . . . I understand the argument, well give them the trust. But . . . they can't just allege undue influence and not provide any proof of it or any facts. They had no contact with these people. How would they know that there would be undue influence? And maybe that's all an argument for another day, your Honor, and it's certainly going to be a motion for summary disposition because there's nothing in the petition that establishes any undue influence. And what I'm saying to this Court is without providing any undue influence, it's just pure harassment to keep saying we want this, we want that, we want a copy of the trust, we're going to argue about this, when you're clearly omitted; and they have been told from day one, you are clearly omitted.

And not only were you clearly omitted from this trust, you were clearly omitted from the plan prior to that by a separate attorney. In their answer, in their brief, they make an allegation which is completely untrue; and that is in '92 that somehow these grandchildren were included in their plan. And they have never been included in their plan to the best knowledge and information of, of the children. So, you know, to allege that, I assume that if they really had proof of that allegation, they would have attached it; but they didn't.

. . . I understand that the Court may say, well give them a copy of the trust, it doesn't hurt anything. But . . . I think it's important that the Court understand that this is not the first time that . . . these grandchildren were omitted. And . . . how are they going to say that there was undue influence when they had no relationship?

The court acknowledged that the issue of undue influence was not yet before it, but asked Farougi, "do you have any type of offer of proof at all with regard to undue influence?" Counsel replied that the Greggs would testify that "they were told by their grandparents they were taking care of them." The court advised, "There's a difference between grandparents saying something that . . . we're going to take care of you. But it's really a completely different matter to prove undue influence, that they were unduly influenced to omit them." The court inquired whether Farougi had "doctor reports or witnesses," or "some kind of hospital charts, or records." Farougi replied, "Well, we do have someone standing over their shoulder while Reiner put a bunch of papers in front of Franz and said here just sign this." The other evidence would "have to come through discovery." Otherwise, it would come through the Greggs' "testimony from their observations of . . . their grandparents; and grandparent's behavior in the later years, the hospitalization of grandmother in her later years in nursing care."

[W]hat I have . . . is clients . . . who did see their grandparents, did watch them deteriorate, did know what their grandparents had told them many times, and then all the sudden saw a huge change in what transpired at the end and was totally different. And, and also know that there was a lot of exertion by Hilda and Reiner and greed over the years that they observed.

Following the pretrial conference, the probate court ordered Hilda and Reiner to provide "true and accurate excerpts" of the trust "which include the names of all beneficiaries" and title and signatory pages. Biddinger filed proof of compliance shortly thereafter.

Another pretrial conference was scheduled for August 18, but was adjourned until August 31. The probate court started the proceeding by summarizing an off-the-record conversation with Farougi:

I had asked Mr. Farougi where he thought the case should go and he suggested there should be a scheduling order and allow for motion practice for the case to proceed on the basis of undue influence. I had pointed out to counsel that I am going to be setting the matter for a status conference in the meantime, which is going to be around three weeks or four weeks, I feel compelled to determine whether or not there needs to be a threshold showing as to the claim of undue influence before the case proceeds. . . .

. . . [T]here's some pretrial issues that still need to be resolved in my mind and I intend to resolve those, if [at] all, if there are issues. But I want to be confident that before we have more discovery or more proceedings in this matter, that we're on the proper track. I'm not saying we are; I'm not saying we aren't. But I'm going to do research to determine that proper course of proceedings in this particular case. So, that's what we're going to do. Everything's on hold for about three weeks. We'll reconvene and I will inform counsel of my findings after conducting some legal research in the meantime.

The status conference was scheduled for September 29, but the parties stipulated to an adjournment to October 27 to accommodate the attorneys' schedules. That status conference never occurred. On September 26, the probate court issued an order dismissing Jeremy and Erica's petition. The court reasoned:

The only evidence provided by the petitioners that undue influence existed in the creation of the 2015 will or the 2018 trust is that the petitioners['] names were spelled incorrectly and that Reiner Kreissig is listed as Franz Weiser's child. Reiner Kreissig is Maria Weiser's biological child and resided with Franz Weiser since Franz and Maria had been married. It is unclear whether Franz Weiser ever legally adopted Reiner Kreissig, however, the 1992 General Durable Power of attorney, the 2015 will, and the 2018 trust all provide evidence that Franz Weiser thought of Reiner Kreissig as his child. The petitioners have also stated that Franz Weiser did not have all of his faculties during the execution of the 2015 will or 2018 trust. No evidence has been provided to the Court regarding Franz Weiser's mental health at the time of either the will or the trust. The Court finds that in this matter there is no affirmative evidence that undue influence was exercised by the co-trustees on Franz Weiser with regard to the 2015 will and the 2018 trust. Without affirmative evidence of undue influence, the Court may not find the documents void and therefore, considers the unambiguous language of both the 2015 will disinheriting Erica Gregg and Jeremy Gregg and the 2018 trust excluding Erica Gregg and Jeremy Gregg. Considering the language of the will and the trust,

the Court finds that Erica Gregg and Jeremy Gregg are not beneficiaries and are therefore not entitled to further production of documents or to the determination of the validity of the trust.

The Greggs sought reconsideration of the probate court's order. They asserted that they learned only two days before the first hearing that they were no longer listed in the trust, after requesting a copy of the trust for eight months. The Greggs lamented that two pretrial conferences were held and yet no scheduling order issued. Further, despite that the July 21 hearing was limited to a single issue, the court asked Farougi "for his proofs to substantiate the [Greggs'] claims." The Greggs believed the probate court dismissed their petition because of Farougi's lack of preparation and as a result, they terminated his representation. In the remainder of their lengthy, in pro per motion, the Greggs described the testimony they would have provided to support their claim of undue influence.

The probate court denied the Greggs' motion for reconsideration, concluding that they "presented the same issues ruled on by the court" and had not demonstrated any palpable error.

Jeremy and Erica Gregg now appeal.

## II. ANALYSIS

With the assistance of appellate counsel, the Greggs now hit the point they missed in their in pro per reconsideration motion: the probate court sua sponte summarily dismissed their petition without providing adequate notice and an opportunity to be heard.

A court may sua sponte summarily dismiss an action under MCR 2.116(I)(1) if the pleadings establish that one party is entitled to judgment as a matter of law or if the proofs presented demonstrate that there are no genuine issues of material fact. *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 549; 899 NW2d 408 (2017), citing *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). This may not be done, however, " 'in contravention of a party's due process rights.' " *Lamkin*, 318 Mich App at 549-550, quoting *Al-Maliki*, 286 Mich App at 489.

> "[T]here can be no question that, at a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). This basic and fundamental concept indisputably applies in the context of summary proceedings; this Court so held quite clearly in *Al-Maliki*. Sua sponte motions for summary disposition are permitted under the court rules, but no exception to basic due-process requirements exists in MCR 2.116(I)(1) or elsewhere. "It is a matter of simple justice in our system for a party to be given fair notice and an opportunity to be heard before the boom is lowered." *DKT Mem Fund Ltd v Agency for Int'l Dev*, 281 US App DC 47; 887 F2d 275, 301 n 3 (1989) (Ginsburg, J., concurring in part and dissenting in part).

> Federal district courts, too, may grant summary judgment sua sponte. In so doing, however, a district court must "determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the

proposition that there is no genuine issue of material fact to be tried . . . ." *Schwan-Stabilo Cosmetics GmbH & Co v Pacificlink Int'l Corp*, 401 F3d 28, 33 (CA 2, 2005) (quotation marks and citation omitted). This rule comports with the United States Supreme Court's observation in *Celotex Corp v Catrett*, 477 US 317, 326; 106 S Ct 2548; 91 L Ed 2d 265 (1986), that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence*." (Emphasis added.) [*Lamkin*, 318 Mich App at 550.]

Here, as in *Lamkin*, the court's "failure to notify" the parties "that it was contemplating summary disposition . . . constitutes a fatal procedural flaw necessitating" a return to the probate court. *Id*. at 550-551. The probate court alerted the parties that it would conduct legal research "to determine whether or not there needs to be a threshold showing as to the claim of undue influence before the case proceeds." However, the court did not place the Greggs "on notice that [they] had to come forward with all of [their] evidence" before that research was even begun. *Id*. at 550. The court did not ask for supplemental briefing or schedule a hearing for the parties to present their positions on the threshold showing necessary to raise an undue influence claim. The court did not schedule an evidentiary hearing so the parties could make an offer of proof. Indeed, the cotrustees had not yet filed a motion for summary disposition, which would have triggered the Greggs to file a response accompanied by supporting evidence.

Moreover, the petition was not deficient such that summary disposition would have been supported under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). A petition may be summarily dismissed for failure to state a claim only "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot." *Id*. at 162.

> To prove a claim of undue influence, a petitioner must show
>
> "that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient." [*In re Karmey Estate*, 468 Mich 68, 75; 658 NW2d 796 (2003), quoting *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976).]

The Greggs alleged that the Weisers' earlier estate plan included them as beneficiaries, "inheriting GUNDA GREGG's share by representation." They alleged that in January 2018, "while MARIA WEISER was incapacitated," Hilda and Reiner unduly influenced Franz to change his plan, to establish a trust, and to transfer his and Maria's property into the trust. The Greggs asserted that the certificate of trust existence was never filed in Huron County, implying intent to hide the trust from the Greggs. The Greggs then stated that undue influence was "presumed" as the Weisers disinherited "the natural objects of [their] bounty." They further alleged that the Weisers "would never have disinherited their grandchildren, JEREMY GREGG and ERICA

GREGG, the last remaining legacy of their departed daughter GUNDA GREGG, if it [sic] not for the undue influence" of Hilda and Reiner.

While these allegations are thin, sua sponte dismissing the petition was not warranted. When a court summarily dismisses a claim under MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). The probate court did not allow the Greggs an opportunity to argue against summary dismissal, let alone give them an opportunity to amend the petition. The statements of their counsel, Erica's affidavit, and the motion for reconsideration demonstrate that the Greggs could strengthen the allegations in the complaint if they were deemed inadequate, and could seek discovery of the evidence needed to support their claim. Accordingly, the probate court improperly dismissed this action.

We vacate the order dismissing the petition and remand for further proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood